UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
HOME IT, INC.,

        Plaintiff,

    - against -

WUPIN WEN, SHENZHEN TRYNOW
INTELLECTUAL PROPERTY CO., LTD., and
JOHN DOES 1-10,

        Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-7070 (MKB) (VMS)

PAMELA K. CHEN, United States District Judge[1]:

  Plaintiff seeks entry of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. For the reasons stated herein, the Court grants Plaintiff's motion for entry of a preliminary injunction against Defendant Wen.[2]

## BACKGROUND

**I. Findings of Fact**

  The Court assumes the parties' familiarity with the relevant facts and procedural history in this case and incorporates by reference its December 23, 2019 decision on Plaintiff's previous motion for a temporary restraining order. (*See generally* Dec. 23, 2019 Memorandum & Order,

---

[1] Though this matter is assigned to the Honorable Margo K. Brodie, the undersigned, acting in the capacity of Miscellaneous Judge, decided Plaintiff's motion for a temporary restraining order and preliminary injunction.

[2] Plaintiff, in its proposed preliminary injunction order, only asks for relief as to Defendant Wen. (*See* Proposed Preliminary Injunction Order, Dkt. 17-1.) Furthermore, the Court notes that Wen, as the purported owner of the Saganizer trademark, is the only Defendant who would be able to withdraw the trademark infringement claim at issue. (*See* Exhibit C to Declaration of Joel Teitelbaum ("Teitelbaum Dec."), Dkt. 5-2, at ECF 18 (noting that Amazon will "only accept retractions [of intellectual property infringement claims] if the *rights owner* clearly states that they made an error") (emphasis added).) Accordingly, the Court considers whether to enter a preliminary injunction order only as to Defendant Wen.

Dkt. 13); *see also Home It, Inc. v. Wen*, No. 19-CV-7070 (MKB) (VMS), 2019 WL 7168370 (E.D.N.Y. Dec. 23, 2019). Additionally, pursuant to Federal Rule of Civil Procedure 52(a)(2), the Court makes the following findings of fact in support of its entry of a preliminary injunction against Defendant Wen.

Plaintiff is a New York Corporation that sells home furniture and organizing products through e-commerce portals. (Teitelbaum Dec., Dkt. 5-2, ¶ 2.) Its business is particularly reliant on selling items on Amazon. (Second Declaration of Joel Teitelbaum ("Teitelbaum Supp. Dec."), Dkt. 18, ¶¶ 14–15.) Plaintiff began using Saganizer as a mark "to identify some of its products in late 2014 and began using the trademark Saganizer in 2015 on or in association with many of its products." (Teitelbaum Dec., Dkt. 5-2, ¶¶ 3–4.) Plaintiff's use of Saganizer was as a common law trademark; Plaintiff did not formally register this trademark with the United States Patent and Trademark Office ("PTO"). (*Id.* ¶ 6.)

In August 2016, Defendant Wen filed an application for the Saganizer trademark, with the help of Defendant Shenzhen Trynow Intellectual Property Co., Ltd. ("Trynow"). (Exhibit 2 to Declaration of Ariel Peikes, Esq. ("Peikes Dec."), Dkt. 5-4, at ECF[3] 4–10.) The application states that "the mark was first used by the applicant . . . at least as early as 02/01/2015, and first used in commerce at least as early as 02/01/2015, and is now in use in such commerce." (*Id.* at ECF 7.) The application also includes a picture of a Lazy Susan product with the trademark "saganizer" on it. (*Id.* at ECF 10.) This appears to be the same picture used by Plaintiff to advertise its common-law-trademarked Lazy Susan Turntable 360-degree product, except that, unlike the product depicted in Defendant's photograph, Plaintiff's Lazy Susan does not contain a "Saganizer" label

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

on it. (Teitelbaum Dec., Dkt. 5-2, at ECF 3–4; *id*. ¶ 12 (the "only difference between the photo [HomeIt] has used and the photo submitted by Wen is that Wen (or perhaps [her] Chinese representative) electronically added the word 'Saganizer' to HomeIt's photo.").) The PTO issued a trademark registration for the Saganizer trademark to Defendant Wen in March 2017. (Trademark Registration, Dkt. 5-4, at ECF 2.)

The contact emails provided in Defendant Wen's trademark registration application, trademark@cn-ip.cn and trynow@cn-ip.cn, have been used on several other trademark applications by other individuals and businesses. (Peikes Dec., Dkt. 5-3, ¶ 13 (citing attached Exhibits 2, 4, 6, 8, 10, 12, and 14, all of which feature these emails in their trademark registration applications).) However, as soon as these trademarks became the subject of litigation or challenge, the purported rights owners abandoned or otherwise failed to defend these trademarks. (*See id*. ¶¶ 14–16, 18.)

On December 13, 2019, Amazon informed Plaintiff that three products listed for sale through one of Plaintiff's storefronts on Amazon were delisted because "one or more of your listings may be infringing the intellectual property rights of others." (Exhibit C to Teitelbaum Dec., Dkt. 5-2, at ECF 17–18; *see also* Teitelbaum Dec., Dkt. 5-2, ¶ 18.) Though the contact information listed in the notice from Amazon was for a "Ruby" (Exhibit C to Teitelbaum Dec., Dkt. 5-2, at ECF 18), Plaintiff has learned that the complaint was brought by Defendant Wen, relying on her Saganizer trademark (Teitelbaum Dec., Dkt. 5-2, ¶ 7). In its notice to Plaintiff, Amazon also informed Plaintiff that "[w]e only accept retractions if the rights owner clearly states that they made an error." (Exhibit C to Teitelbaum Dec., Dkt. 5-2, at ECF 18.) Plaintiff has attempted to contact Defendant Wen to address this issue, but has received no response. (Teitelbaum Supp. Dec., Dkt. 18, ¶¶ 6–7.)

3

Amazon constantly monitors and scores each seller's account performance through an Account Health dashboard that "shows how well [its] account is performing against the performance metrics and policies required to sell on Amazon." (Exhibit C to Teitelbaum Dec., Dkt. 5-2, at ECF 18; *see also* Teitelbaum Supp. Dec., Dkt. 18, ¶¶ 9–11.) Plaintiff's account indicates that, including Defendant Wen's complaint, there are intellectual property complaints against five of Plaintiff's products. (Teitelbaum Supp. Dec., Dkt. 18, ¶ 11.) Amazon can suspend sellers from Amazon without any warning. (*Id.* ¶ 13.) Given the number of intellectual property complaints against Plaintiff, it is at imminent risk of being suspended from selling on Amazon altogether. (*Id.* ¶ 12.) A total suspension from Amazon would destroy Plaintiff's business. (*Id.* ¶¶ 14–15.)

## II. Procedural History

On December 23, 2019, the Court denied Plaintiff's motion for a Temporary Restraining Order ("TRO") as to Defendant Wen,[4] finding that Plaintiff had failed to establish irreparable harm. (*See* Dec. 23, 2019 Minute Entry); *see also Home It Inc.*, 2019 WL 7168370, at *2. The Court held a hearing on Plaintiff's motion for a preliminary injunction on January 13, 2020. (*See* Jan. 13, 2020 Minute Entry.) Plaintiff did not submit any additional evidence in support of its motion before the hearing. However, at the hearing, Plaintiff articulated new theories for why it

---

[4] The Court did issue a TRO against Defendant Trynow, on consent of Defendant Trynow. (*See* Dkt. 14.) Plaintiff provided notice of its TRO motion to Defendants via email. (Certificate of Service, Dkt. 5-9.) Plaintiff then filed its email correspondence with Trynow's counsel which indicated that Trynow would consent to the TRO in exchange for more time to respond to Plaintiff's preliminary injunction request. (Dkt. 10 at ECF 3; *see also* Dec. 23, 2019 Docket Order.) Although the Court granted Trynow's extension and entered a TRO only as to it (*see* TRO Order, Dkt. 14), Trynow failed to respond to the preliminary injunction motion. Prior to the preliminary injunction hearing, Plaintiff filed further email correspondence indicating that Defendant Trynow's counsel was no longer retained by Trynow. (Dkt. 15-1 at ECF 2.) Defendant Wen has also made no appearance in this case and has failed to respond to Plaintiff's TRO and preliminary injunction motion.

4

is entitled to a preliminary injunction, and per the Court's instructions, submitted additional evidence in support of these arguments on January 15, 2020. (*See generally* Dkts. 17–19.) Plaintiff seeks a preliminary injunction order requiring Defendant Wen to contact Amazon to withdraw her allegations of infringement against Plaintiff and refrain from filing or otherwise communicating any allegations of infringement against Plaintiff to any third parties for the duration of the instant litigation. (*See* Proposed Preliminary Injunction Order, Dkt. 17-1.)

## LEGAL STANDARD

"[A] preliminary injunction is 'an extraordinary remedy never awarded as of right.'" *Benisek v. Lamone*, 138 S. Ct. 1942, 1943, (2018) (quoting *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008)).

> A party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits or [ ] sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction.

*Khan v. Addy's BBQ LLC*, No. 19-CV-2235 (SJF) (AYS), 2019 WL 5781941, at *6 (E.D.N.Y. Nov. 6, 2019) (quoting *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015)); *see also Winter*, 555 U.S. at 21; *Salinger v. Colting*, 607 F.3d 68, 75 (2d Cir. 2010). "The purpose of such interim equitable relief is not to conclusively determine the rights of the parties, . . . but to balance the equities as the litigation moves forward." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (citations omitted); *see also American Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) ("A preliminary injunction is an equitable remedy and an act of discretion by the court.").

## DISCUSSION

### I. Irreparable Harm

"The showing of irreparable harm is [p]erhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 221 (E.D.N.Y. 2013) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)). To show irreparable harm the moving party must establish that "'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Id.* (quoting *Kamerling*, 295 F. 3d at 214); *see also Allstate Ins. Co. v. Harvey Family Chiropractic*, 677 F. App'x 716, 718 (2d Cir. 2017) (summary order) ("Irreparable harm exists 'where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'") (quoting *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)). Additionally, "irreparable harm must be shown to be actual and imminent, not remote or speculative." *Elzanaty*, 929 F. Supp. 2d at 221 (internal quotation marks and citation omitted); *see also WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (defining irreparable harm as "harm to the plaintiff's legal interests that could not be remedied after a final adjudication," such as when "the loss is difficult to replace or measure, or where plaintiffs should not be expected to suffer the loss").

Plaintiff argues that it will suffer irreparable harm absent a preliminary injunction because "Amazon is likely at this point to suspend the HomeIt account without prior notice." (Plaintiff's

6

Supplemental Memorandum of Law ("Pl.'s Supp. Br."), Dkt. 17, at 5.)[5] "[T]he loss of an ongoing business representing many years of effort and the livelihood of its owners, constitutes irreparable harm that cannot be fully compensated by monetary damages." *RMP Capital Corp. v. Bam Brokerage, Inc.*, 21 F. Supp. 3d 173, 182 (E.D.N.Y. 2014) (internal quotation marks, alterations, and citation omitted); *see also Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*, 103 F. Supp. 3d 244, 261 (N.D.N.Y. 2015) (noting that "[t]he Second Circuit also recognizes that the loss of potential business opportunities, such as relationships with customers and business

---

[5] At the January 13, 2020 hearing, Plaintiff also argued that irreparable harm existed because Defendants' likely default meant that Plaintiff would not be able to recover any monetary damages. (*See* Pl.'s Supp. Br., Dkt. 17, at 4–5 (arguing that Plaintiff will suffer irreparable harm because "the chances of HomeIt recovering any monetary damages whatsoever on lost sales that may easily exceed a million dollars over the period of two to three years of the pendency of an action is practically zero").) Specifically, it argued that Defendants' likely default in the instant action is similar to instances where courts have found irreparable harm because a defendant's insolvency made it unlikely that a plaintiff could recover damages even if it obtained a favorable judgment. *See 3M Co. v. HSBC Bank USA, N.A.*, No. 16-CV-5984 (PGG), 2018 WL 1989563, at *7 (S.D.N.Y. Apr. 25, 2018) ("'[C]ourts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents.'") (quoting *Brenntag Int'l Chem., Inc.*, 175 F.3d at 250).

Plaintiff's argument is unavailing. First, "the United States Supreme Court in *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 308 (1999) appear[s] to cast doubt on the continued vitality of the broad exception for insolvency outlined in *Brenntag*." *Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376, 392 (E.D.N.Y. 2016). Moreover, Plaintiff has not shown that, in terms of its ability to recover monetary damages, "there is a substantial chance that upon the final resolution of the action the parties cannot be returned to the positions they have previously occupied." *3M Co.*, 2018 WL 1989563, at *7 (quoting *Brenntag Int'l Chemicals, Inc.*, 175 F.3d at 249–50). The mere likelihood of default is insufficient to establish that Plaintiff will not be returned to its original position, and Plaintiff has not submitted any evidence to support a finding that it will be impossible for Plaintiff to satisfy any default judgment it obtains in the instant action, such as facts demonstrating that Defendants are actually insolvent, or that they do not have any assets in the United States and that it is, therefore, unlikely that Plaintiff could satisfy their judgment abroad. By contrast, the harm to Plaintiff's business, beyond monetary injury alone, that would result from being banned from selling on Amazon altogether, for the reasons discussed *infra*, does constitute irreparable injury.

partners, may constitute irreparable harm") (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)).

> In *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995), the Second Circuit provided the following guidance for determining whether the loss of goodwill is evidence of irreparable harm: "Generally, where we have found no irreparable harm, the alleged loss of goodwill was doubtful, and lost profits stemming from the inability to sell the terminated product could be compensated with money damages determined on the basis of past sales of that product and of current and expected future market conditions. In contrast, where we have found irreparable harm, the very viability of the plaintiff[']s business or substantial losses of sales beyond those of the terminated product have been threatened."

*Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 622 (S.D.N.Y. 2010) (quoting *Tom Doherty Assocs., Inc.*, 60 F.3d at 38).

Here, Plaintiff has demonstrated that the total loss of its business is likely. First, Plaintiff's business is entirely reliant on Amazon to sell its products. (*See* Teitelbaum Supp. Dec., Dkt. 18, ¶ 14 (stating that "Amazon is the ONLY channel of sales that generates the sales volume that my company has been able to build up over the past 9 year[s]").) This relationship is now threatened as a result of Defendant Wen's allegedly fraudulent trademark infringement complaints against Plaintiff, because Amazon not only "constantly monitors and scores each seller's 'account performance'" including how many infringement complaints have been filed against the seller (*see id.* ¶¶ 9–11), but Amazon also reserves the right to "suspend sellers without any prior warning" (*id.* ¶ 13; *see also id.* ¶ 10 (noting that "[t]he Account Health dashboard shows how well your account is performing against the performance metrics and *policies required to sell on Amazon*") (emphasis added)). Including Defendant Wen's complaint, there are intellectual property complaints against five of Plaintiff's products. (*Id.* ¶¶ 10–11.) Teitelbaum, based on his own experience with Amazon as well as the experiences of others, "know[s] that HomeIt is at an imminent risk of being suspended from selling any products whatsoever through Amazon, all as a result of Defendant[] Wen['s] false trademark accusations against HomeIt." (*Id.* ¶ 12.) A

8

suspension from Amazon, even if temporary, "would be fatal to the HomeIt Business." (*Id.* ¶ 15.) Furthermore, Plaintiff's ability to rectify the allegedly fraudulent trademark accusations is hampered by Amazon's policies, which "only accept retractions [of the intellectual property infringement claims] if the rights owner clearly states that they made an error." (Exhibit C to Teitelbaum Dec., Dkt. 5-2, at ECF 18.) This would require Defendant Wen, the listed "Saganizer" trademark owner (Trademark Registration, Dkt. 5-4, at ECF 2), to communicate with Amazon directly. However, despite Plaintiff's best efforts to communicate with Wen and reach a settlement (*see* Second Declaration of Ariel Peikes. Esq. ("Peikes Supp. Dec."), Esq., Dkt. 19, ¶ 2; *see also* Exhibit 1 to Peikes Supp. Dec., Dkt. 19-1, at ECF 2–3), she has refused to communicate with Amazon or Plaintiff, or even defend herself in the instant action (*see* Letter, Dkt. 15). Plaintiff is therefore left without a way to remove one of the trademark infringement complaints that threatens its business relationship with Amazon, which is the foundation that Plaintiff's business is built on. "It is well recognized that the inability of a party to supply its products to customers as a result of a dispute will often result in a loss of goodwill sufficient to establish irreparable harm." *Country Fare LLC v. Lucerne Farms*, No. 11-CV-722 (VLB), 2011 WL 2222315, at *5 (D. Conn. June 7, 2011). Accordingly "[g]iven the likely total loss of its business, Plaintiff has established irreparable harm." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 296 F. Supp. 3d 442, 458 (E.D.N.Y. 2017), *aff'd*, 883 F.3d 32 (2d Cir. 2018); *see also Galvin v. N.Y. Racing Ass'n*, 70 F. Supp. 2d 163, 170–71 (E.D.N.Y.), *aff'd sub nom. Galvin v. N.Y. Racing Ass'n, Inc. (NYRA)*, 166 F.3d 1200 (2d Cir. 1998) (holding that "[i]n order to demonstrate irreparable injury under the business termination standard, the lost business relationship must be one that was vital to the continuation of the business" and that "[t]he total loss of a business clearly constitutes irreparable injury").

**II.     Likelihood of Success on the Merits**

"To establish a likelihood of success on the merits, a plaintiff 'need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent.'" *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484, 497 (S.D.N.Y. 2018) (quoting *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988)). "Further, Plaintiffs need not demonstrate a likelihood of success on the merits of every claim—rather, they need only 'show a likelihood of success on the merits of at least one of [their] claims.'" *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019) (quoting *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018)); *see also Eve of Milady v. Impression Bridal, Inc.*, 957 F. Supp. 484, 487 (S.D.N.Y. 1997) ("Where a plaintiff seeks a preliminary injunction and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits on one of the claims.") (citing *Girls Clubs of Am., Inc. v. Boys Clubs of Am., Inc.*, 683 F. Supp. 50, 52 (S.D.N.Y.), *aff'd*, 859 F.2d 148 (2d Cir. 1988)). Here, Plaintiff brings three claims: (1) a declaratory judgment claim stating that HomeIt's sales of its products under the "Saganizer" trademark does not infringe on Defendant Wen's trademark registration for "Saganizer"; (2) a common law unfair competition claim pursuant to the Lanham Act; and (3) a cancellation of Defendant Wen's trademark registration claim also pursuant to the Lanham Act. (Complaint, Dkt. 1, ¶¶ 39–56.) For the reasons discussed *infra*, the Court finds that Plaintiff has demonstrated a likelihood of success on the merits for its third claim. Accordingly, it will not address Plaintiff's other claims.

"Under the Lanham Act, 'any person who believes that he is or will be damaged' may file a 'petition to cancel a registration of a mark,' for which 'registration was obtained fraudulently.'" *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016) (quoting 15 U.S.C. § 1064(3));

*see also* 15 U.S.C. § 1119 ("In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action"). "Fraud in procuring a trademark registration occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *MPC Franchise*, 826 F.3d at 658 (quoting *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009)) (internal alterations omitted). "'The allegedly fraudulent statements may not be the product of mere error or inadvertence, but must indicate a deliberate attempt to mislead the PTO. [T]he knowing misstatement must have been with respect to a material fact—one that would have affected the PTO's action on the applications.'" *Khan*, 2019 WL 5781941, at *21 (quoting *Orient Express Trading Co., Ltd. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988)) (internal alterations omitted). "A party seeking cancellation of a registered trademark on grounds of fraud must demonstrate the alleged fraud by clear and convincing evidence." *MPC Franchise*, 826 F.3d at 658 (internal quotation marks and citation omitted); *accord Orient Express*, 842 F.2d at 653.

Here, the Court finds that Plaintiff has demonstrated that it is likely to prevail on its trademark cancellation claim. In Defendant Wen's trademark application, it states that "the mark was first used by the applicant . . . at least as early as 02/01/2015, and first used in commerce at least as early as 02/01/2015, and is now in use in such commerce." (Exhibit 2 to Peikes Dec.., Dkt. 5-4, at ECF 7.) However, Plaintiff provides dated exhibits showing it had been using the trademark before the first-use date claimed by Defendant Wen. (*Compare id.* at ECF 4 (stating that the "first use anywhere date" was "[a]t least as early as 02/01/2015"), *with* Teitelbaum Dec., Dkt. 5-2, at ECF 10 (showing that Plaintiff has been using the Saganizer trademark since at least October 2014) *and id.* at ECF 11 (showing that Plaintiff was selling items bearing the Saganizer

11

trademark since at least June 2015).) Furthermore, attached to Defendant Wen's application is a photograph of a Lazy Susan product that Teitelbaum attests is the same photograph that has been used by Plaintiff since 2015 to advertise this product. (Teitelbaum Dec., Dkt. 5-2, ¶ 12 (stating the "only difference between the photo [HomeIt] has used and the photo submitted by Wen is that Wen (or perhaps [her] Chinese representative) electronically added the word 'Saganizer' to HomeIt's photo.").) Defendant Wen's use of the same photograph used by Plaintiff to advertise its Lazy Susan product strongly suggests that Defendants knew that the statements regarding the use of the trademark were false when they filed the application.

Plaintiff also describes several instances of where the emails used by Defendant Wen to register the "Saganizer" trademark, trademark@cn-ip.cn and trynow@cn-ip.cn, were also used in several trademark applications by other individuals and businesses that were then the subject of litigation or otherwise challenged. (Peikes Dec., Dkt. 5-3, ¶¶ 11–14.) In these cases, many of purported trademarks have been "[a]bandoned by the Applicant/Owner following a Petition to Cancel or a Petition to Oppose at the PTO." (*Id.* ¶ 14.) These other instances of apparent fraudulent trademark registrations further suggest that Defendants are engaged in a fraudulent trademark scheme. (*See* Dec. 3, 2019 Testimony of Professors Barton Beebe and Jeanne Fromer before the U.S. Senate Judiciary Committee, Dkt. 11-2, at 18 (concluding that 66.9% of use-based trademark applications originating in China are "probably fraudulent").) Furthermore, given Defendants' failure to appear and defend the instant action, Defendants have not provided any countervailing evidence. *See Pearson Educ., Inc. v. Labos*, No. 19-CV-487 (CM), 2019 WL 1949820, at *5 (noting that the defendants have offered no countervailing evidence when finding that plaintiffs had demonstrated a likelihood of success on the merits). Accordingly, the Court

finds that Plaintiff has sufficiently demonstrated a likelihood of success of its trademark cancellation claim.

### III. Balance of Hardships

"When assessing the balance of hardships between the parties, '[t]he relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Pearson Educ., Inc.*, 2019 WL 1949820, at *6 (quoting *Salinger*, 607 F.3d at 81). Given that "the Court has already explained that the Defendant's actions, if not enjoined will likely result in irreparable harm to the Plaintiff and that the Plaintiff is likely to succeed as to the merits of its case," *Country Fare LLC*, 2011 WL 2222315, at *10, Plaintiff has demonstrated sufficient hardship. Wen, as a result of her nonappearance, has failed to provide any evidence of hardship. Additionally, Wen would be unable to demonstrate any hardship based upon her inability to rely on a trademark she has, more likely than not, obtained fraudulently. *Cf. Pearson Educ., Inc.*, 2019 WL 1949820, at *6 ("'[I]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product.") (quoting *WPIX, Inc.*, 691 F.3d at 287). Accordingly, Plaintiff has demonstrated that the balance of hardships tips in its favor.

### IV. Public Interest

Finally, "a court must ensure that the proposed injunction will not harm the public interest." *N. Am. Soccer League, LLC*, 296 F. Supp. 3d at 477 (citing *SEC v. Citigroup Global Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012)). The Court finds that "the public interest is served by such an injunction against the assertion of what at this preliminary stage clearly and convincingly appears to be wrongful and fraudulent claims to a right to a trademark." *Country Fare LLC*, 2011 WL 2222315, at *10; *cf. N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344

(S.D.N.Y. 2010) ("[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.").

* * *

Accordingly, the Court finds that Plaintiff has demonstrated that it is entitled to a preliminary injunction.

## V. Preliminary Injunction Bond

Federal Rule of Civil Procedure 65(c) commands:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

It is "within the discretion of the district court to decide that, under the circumstances, no security [is] required[.]" *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004) (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997)); *id.* ("Rule 65(c) gives the district court wide discretion to set the amount of a bond, and even to dispense with the bond requirement where there has been no proof of likelihood of harm . . . .") (internal quotation marks and citation omitted). Here, the Court waives the bond requirement "[b]ecause Defendants do not identify any 'costs or damages' they may incur if wrongfully enjoined." *725 Eatery Corp.*, 408 F. Supp. 3d at 470; *accord Christian Fellowship Ctrs. of N.Y., Inc. v. Vill. of Canton*, 377 F. Supp. 3d 146, 167 n.16 (N.D.N.Y. 2019); *see also Rex Medical L.P.*, 754 F. Supp. 2d at 626 ("It is well-settled that a district court has wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm [to the non-movant].") (internal quotation marks and citations omitted).

## CONCLUSION

For the reasons stated above, Plaintiff's motion for a preliminary injunction is granted. The Court will issue the Preliminary Injunction Order as a separate docket entry.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 21, 2020
       Brooklyn, New York